**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ludin D.B.P.,

Petitioner,

v.

Markwayne Mullin, Secretary, U.S. Department of Homeland Security; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement; David Easterwood, Acting Director, St. Paul Field Office, Immigration and Customs Enforcement; Todd Blanche, acting U.S. Attorney General; Department of Justice; Joel Brott, Sheriff, Sherburne County, Minnesota; Warden ERO Sherburne County Detention Facility, Elk River, Minnesota,

Respondents.

Case No. 26-cv-2557 (NEB/SGE)

**REPORT & RECOMMENDATION**

---

This matter is before the Court on Ludin D.B.P.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241.[1] (Pet., Dkt. No. 1.) This Petition has been referred to the undersigned for a report and recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that Ludin's Petition be granted in part and denied in part.

---

[1] Pursuant to this District's policy in immigration cases, the Court identifies Petitioner only by his first name and last initials.

**BACKGROUND**

Ludin is a citizen of Guatemala. (Pet. ¶¶ 1, 10.) He entered the United States in 2020 as an Unaccompanied Alien Child (UAC) at the age of seventeen. (*Id.* ¶ 1.) Soon after his entry, Ludin was detained by immigration officials, placed in removal proceedings, and released. (*Id.*; Lee Decl. Ex. B, at 2.) He now lives in Melrose, Minnesota with his daughter, who is a United States citizen. (Pet. ¶ 17.) Ludin filed an Application for Asylum in 2021, which remains pending. (Lee Decl. Ex. B, at 3.) The government approved his request for employment authorization in 2023. (*Id.*)

On May 4, 2026, Ludin was arrested in Stearns County, Minnesota on suspicion of driving while intoxicated. (Pet. ¶ 2.) He was taken into Immigration and Customs Enforcement ("ICE") custody on his release. (*Id.* ¶ 2.) He is currently detained in the Sherburne County Jail. Ludin has not been charged with any offense relating to his arrest and there is no indication in the record as to the status of any possible criminal proceedings against him. (*Id.*; Dkt. 7, at 2.) He has two traffic tickets but no criminal record. (Pet. ¶ 17.)

The Department of Homeland Security (DHS) commenced removal proceedings on May 4, 2026, under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Lee Decl. Ex. C.) The hearing before an immigration judge was scheduled for May 19, 2026. (*Id.* at 1.) The parties have not updated the Court as to what, if anything, occurred at the hearing. The Court will therefore assume the status quo.

On May 8, 2026, Ludin filed this verified petition challenging his custody as unconstitutional and seeking his immediate release.[2] He claims that his detention violates the Due Process clause of the Fifth Amendment, the INA,[3] and the Administrative Procedure Act, 5 U.S.C. § 706. Respondents oppose the Petition, arguing that Ludin is lawfully detained under 8 U.S.C. § 1225(b)(2)(A) as a noncitizen present in the United States without lawful admission and is therefore subject to mandatory detention.

## ANALYSIS

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release." *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions under 28 U.S.C. § 2241. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

A writ of habeas corpus can be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3):

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

---

[2] On May 18, 2026 Ludin filed a request for expedited adjudication of his asylum application. (Dkt. 7, at 9 n.3.) No update has been provided to the Court.

[3] Ludin recognizes that his INA claim is currently foreclosed under the Eighth Circuit Court of Appeals decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), but wishes to preserve the issue for appeal. (Pet. ¶¶ 7, 31-38.) The Court will consider the issue raised and preserved and will not address it in this Order. *Avila* does not preclude the Court's review of Luden's other arguments in support of release.

*Id.* at 693 (citations omitted). The distinction between a noncitizen who has "effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* The petitioner bears the burden to prove that his detention is illegal by a preponderance of the evidence. *Belsai D.S. v. Bondi*, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

## II. Due Process Claim

Ludin argues that his continued detention violates his right to due process under the Fifth Amendment and should be analyzed using the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Respondents contend that the *Mathews* test is inapplicable because the government can detain an alien for as long as deportation proceedings are still pending without running afoul of due process, as held in *Banyee v. Garland*, 115 F.4th 928, 931–933 (8th Cir. 2024).

The Judges in this District, save one, have concluded that *Banyee* does not foreclose applying the *Mathews* balancing test in these circumstances. *See, e.g., Felipe S.P. v. Blanche*, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *5-6 (D. Minn. July 2, 2026); *Rey A. v. Blanche*, No. 26-CV-2287 (NEB/JFD), 2026 WL 1678230, at *5 (D. Minn. May 29, 20206), *Report and Recommendation adopted by* 2026 WL 1683219 (D. Minn. June 10, 2026); *Jesus Alejandro G. A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *6 (D. Minn. May 18, 2026); *Manuel G. v. Blanche*, No. 26-CV-2385 (SRN/ECW), 2026 WL 1256358, at *3 (D. Minn. May 7, 2026); *Axel J.M.C. v. Stanski*, No. 26-CV-2281 (JRT/EMB), 2026 WL 1171344, at *3 (D. Minn. Apr. 29, 2026); *Orlando*

*R.V.V. v. Blanche*, No. 26-CV-1903 (MJD/SGE), Dkt. 11 (D. Minn. Apr. 28, 2026); *but see Brayam G.G. v. Bondi*, No. 26-CV-1985 (DMT/EMB), Dkt. 22 ¶ 8 (D. Minn. Apr. 15, 2026). The Court agrees with the majority approach and will proceed accordingly.

It is beyond dispute that Ludin is entitled to due process of law. The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The United States Supreme Court has determined that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (holding that "'[it] is well established that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 321.

Relying *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020), Respondents argue that the first factor, the private interest that will be affected by the official action, weighs in their favor. (Dkt. 7, at 7.) But *Thuraissigiam* stands for the

proposition that noncitizens apprehended near the border have no constitutional right to review of their expedited deportation orders. 591 U.S. at 140. This case is different. Ludin was released after encountering immigration officials when he entered the country, applied for asylum, received authorization to work, and built a life for himself and his family. *Thurassigiam* simply does not apply in these circumstances.

Instead, the Court finds that the first factor weighs in Ludin's favor. A person's interest in being free from detention is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). Ludin is currently held at Sherburne County Jail, where he has been since early May 2026. It cannot be disputed that he is detained under conditions that resemble criminal incarceration. *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) ("When assessing [the first factor], courts consider conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration."). Ludin is being detained away from his young child, he lacks freedom, familial companionship, and the ability to earn an income. Accordingly, the first *Mathews* factor favors Ludin's petition.

The second *Mathews* factor considers the risk of an erroneous deprivation of liberty and "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." *Selvin Adonay E.M. v. Noem*, 817 F. Supp. 3d 720, 734 (D. Minn. 2025) (citing *Mathews*, 424 U.S. at 335). The Court finds that "a substantial risk

of erroneous deprivation of liberty exists" for a noncitizen, like Ludin, "who was arrested within the United States and lacks any prior release by immigration authorities, but who has established a life here in the United States" when he is detained without an individualized determination. *Rodriguez Brizuela v. Noem*, Case No. 5:26-cv-0279-JKP, 2026 WL 752257, at *6 (W.D. Tex. Mar. 12, 2026). And although detention during removal proceedings is constitutionally permissible, "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." *Jesus Alejandro G.A. v. Blanche*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (cleaned up).

An individualized hearing would give both parties an opportunity to be heard as to whether Ludin's continued detention is necessary to advance the regulatory goals of pre-removal detention. It should be noted that Ludin's history since entering the United States does not suggest that he would fail to appear for immigration proceedings. He has applied for asylum and recently moved for an expedited determination on that application. He plainly seeks to remain here legally with his child. In addition, Lupin does not appear to be a danger to the community. He has been law abiding, other than two traffic tickets, since he entered the United States. Although he was arrested on suspicion of driving while intoxicated in May 2026, there is no indication in the record that he has been charged with that offense, let alone convicted. The second factor also weighs in his favor.

The third *Mathews* factor is the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 226. Respondents argue that "Congress has a strong interest in the uniform administration of the immigration laws, in ensuring the availability of applicants for admission during removal proceedings, and in avoiding the administrative burdens of grafting onto § 1225 bond-hearing regime Congress did not create." (Dkt. 7, at 7-8.) The Court agrees that uniformity of immigration proceedings and ensuring the availability of applicants during those proceedings are strong governmental interests. But the Court does not agree, as already noted, that such interest supersedes detainees' due process rights. The Court is unpersuaded that Respondents' interests are "subverted by requiring the minimal procedural safeguard of a bond hearing." *Manuel G. v. Blanche*, Case No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *5 (D. Minn. May 7, 2026). As noted, granting Ludin a bond hearing will give both sides an opportunity to present arguments as to continued detention. This safeguard will "reduce the risk of erroneous deprivation without imposing significant burdens on the Government." *Selvin*, 817 F. Supp. 3d at 734.

The Court concludes that the *Mathews* factors weigh in Ludin's favor and that mandatory detention under § 1225(b)(2)(A), as applied to Ludin in this case, violates his constitutional right to procedural due process.[4] The appropriate remedy for such a

---

[4] Because the Court determines that Ludin's Due Process argument requires granting relief, the Court does not reach his arguments under the APA. *Faysal N. v. Noem*, Case No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026).

constitutional deprivation is an opportunity to be heard, which is the equivalent of a bond hearing.

**CONCLUSION**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition (Dkt. No. 1) be **GRANTED IN PART** as follows:

    a. Petitioner's detention without an individualized bond hearing under § 1225(b)(2) be determined to violate his due process rights;

    b. Respondents be ordered to provide Petitioner with a bond hearing within one week after issuance of the Court's Order;

    c. Respondents be ordered to file notice of such bond hearing directly with the Court within two hours of its scheduling;

    d. If a bond hearing takes place that results in Petitioner's release, Respondents be ordered to:

        i. Release Petitioner to Minnesota;

        ii. At a safe time and place communicated at least two hours in advance to Petitioner's counsel; and

        iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys, and the like;

    e. If a bond hearing does not take place within one week, the Respondents be ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 2(c) above;

2. Respondents be ordered to file a status report with the Court within 48 hours of the conclusion of the bond hearing or Respondents' decision to release

Petitioner from custody detailing the results of the bond hearing or its actions related to release[5]; and

3. The remainder of the Petition be **DENIED WITHOUT PREJUDICE**.

Dated: July 24, 2026

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge

**NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

[5] The Court understands that the immigration court could determine that it lacks jurisdiction over Ludin's bond determination in light of *Avila*, as it did in *David J.C.P. v. Blanche*, No. 26-CV-2181 (DWF-ECW), Dkts. 18-1, 19 at 2-3 (D. Minn. May 14, 2026). In that case, Judge Donovan W. Frank held that the immigration court hearing did not "satisfy the Court's order requiring that Respondents provide Petitioner with a bond hearing." *Id.* Dkt. 19, at 2. Should that be the case here, the Court should consider recommending Ludin's immediate release, as Judge Frank did in *David J.C.P.* *Id.* at 3.